## Crescent Township Road.

*Road law—Irregularity in proceedings—Opening road—Expiration of time for appeal—Quashing proceedings—Appeals.*

After the expiration of the time for an appeal from an order confirming a report of viewers, no irregularity in the proceedings which does not go to the jurisdiction of the court to make the decree, or present upon the face of the order an insuperable barrier to its execution, can be considered.

The failure of viewers to attempt to procure a release of damages is an irregularity which can only be questioned upon appeal within the time allowed by law, for it is not jurisdictional in its nature.

When upon the undisputed facts a court is without authority to enter an order confirming a report of viewers that order may be directly attacked by a party in interest at any time before it has been carried into execution. Such an order is similar to a judgment void upon its face, which may be stricken off on motion.

Where the record of a proceeding to open a road shows on its face that neither terminus of the road can be ascertained and located on the ground, the whole proceedings will be quashed on the petition of a party in interest filed long after the time for an appeal from the order of confirmation has expired.

The time within which a party may appeal from the refusal to strike off or quash a decree or order void upon its face, begins to run from the date of such refusal, and not from that of the decree.

Argued April 8, 1901. Appeal, No. 43, April T., 1901, by National Insurance Company, from decree of Q. S. Allegheny County, Sept. T., 1887, No. 7, dismissing petition in In re Public Road in Crescent Township. Before RICE, P. J., BEAVER, OR-LADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Petition for leave to file exceptions nunc pro tunc to report of reviewers.

The facts are fully stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing petition.

*Frank C. Osburn*, with him *J. C. McCombs*, for appellant.— The petitioner has a standing to demand the relief for which he prays: O'Hara Twp. Road, 152 Pa. 319; In re Dunbar Twp. Road, 12 Pa. Superior Ct. 491 ; Verona Borough v. Allegheny Valley R. R. Co., 152 Pa. 368.

The record in this case shows affirmatively on its face a substantial change in the ending point of the road: Lower Merion Road, 58 Pa. 66; In re Ligonier Road, 21 P. L. J. 92; Derry Twp. Road, 11 Pa. Superior Ct. 232; Boyer's Road, 37 Pa. 257.

The termini of the road is sufficiently defined to properly locate the same: Montgomery Twp. Road, 15 Pa. C. C. Rep. 384; Pocopson Road, 6 Pa. C. C. Rep. 617; New Hanover Twp. Road, 7 Montgomery 25; O'Hara Twp. Road, 152 Pa. 319; Fretz's Appeal, 15 Pa. 397.

*Jesse H. Wise*, of *Wise & Minor*, with him *Franklin P. Iams*, for appellees.—The present province of the court is limited to a consideration of matters of substance apparent upon the record in the strict sense of that term: Dunbar Township, 12 Pa. Superior Ct. 495; Roche's Road, 10 Pa. Superior Ct. 91; O'Hara Twp. Road, 152 Pa. 319; Bean's Road, 35 Pa. 280; In re Road in Lower Merion, 58 Pa. 66; Cassville Borough Road, 4 Pa. Superior Ct. 513.

The termini were sufficiently shown: Willson's Road, 1 Pears. 170, Kingston Twp. Road, 5 Kulp, 235; Trickett's Pennsylvania Road Law, 30; Sterrett Twp. Road, 114 Pa. 630; Southampton Road, 21 Pa. 356; Kyle's Road, 4 Yeates, 514; Miller's Road, 9 S. & R. 34; In re State Street, 8 Pa. 485; West Pikeland Road, 63 Pa. 472; Byberry Road, 6 Phila. 384.

OPINION BY W. D. PORTER, J., July 25, 1901:

This proceeding was commenced in 1887, the report of viewers was set aside and that of the reviewers confirmed absolutely on June 22, 1889, the first order to open was issued on June 4, 1890, nothing was done under this order and the whole matter slumbered for ten years. Upon petition of a number of citizens, on May 15, 1900, a rule was granted on the commissioners of Crescent township and the supervisors of Moon township to show cause why an attachment should not issue against them for not complying with the order of the court to open said road. The authorities of Moon township, in which a part of the road with one of the termini was located, filed an answer alleging, among other things, that neither the report of reviewers, with the draft attached, or the order to open sufficiently defined the location of said alleged road or its termini, and that they were

unable to find or determine the location thereof in Moon township; that although the order designated that terminal point as near the residence of R. Campbell, the draft attached thereto indicated the said point to be more than 1,000 feet from said residence; that the report of the original viewers and the draft attached located that terminus of the road at the dividing line between the Campbell and Wilson farms, near the residence of R. Campbell, as prayed for in the petition for the road, but this terminus was changed more than 1,000 feet by the reviewers and the road was carried entirely through and beyond the Campbell farm. This was the condition of the record when, on June 13, 1900, the appellant company filed a petition alleging that from 1875 down until the present time it had been the owner and occupant of the farm which, on the draft attached to the report of reviewers, is designated as land of R. Campbell, and that its deed for said tract of land had been on record more than ten years prior to the proceeding for the opening of this road; that it never had released its right to damages for the opening of the road and that neither the board of viewers or reviewers had made any attempt to obtain such release; and it never had any notice or knowledge of the proceeding to locate and open such road until within the past ten days or two weeks. The petition alleged that the road was unnecessary, and that the proceedings of the viewers and reviewers had been irregular in certain respects specified. This petition further alleged that the termini of the road were not in the original petition, the report of viewers or reviewers, or in the order to open sufficiently designated to properly locate the same, and that the report of reviewers had shifted one terminus of the road a quarter of a mile or more away from the point indicated by the petition and the report of the original viewers, thus carrying the road clear across appellant's land and part of an adjoining farm. The petitioner prayed for leave to file exception nunc pro tunc, and that a rule be granted to show cause why the order of confirmation should not be vacated and all the proceedings quashed. The learned court below allowed the petition to be filed, but subsequently refused its prayer, from which action we have this appeal.

When the petition of appellant was presented to the court below the time for an appeal from the order of confirmation was

long past. No irregularity in the proceedings which did not go to the jurisdiction of the court to make the decree, or present upon the face of the order to open the road an insuperable barrier to its execution can now be considered; Cassville Borough Road, 4 Pa. Superior Ct. 511. The refusal of the learned court below to permit exceptions to be filed that went to the merits of the proceeding and raised questions of fact was clearly right. There was nothing upon the face of the proceedings from which it appeared or could be inferred, that the plaintiff was the owner of any land through which the road passed. The record indicates that the land of the plaintiff was then owned and occupied by the heirs of Robert Campbell, that said heirs were notified and damages were awarded to them by the reviewers. The failure of viewers to attempt to procure a release of damages is an irregularity which can only be questioned upon appeal, within the time allowed by law, for it is not jurisdictional in its nature. This leaves for consideration the refusal of the court below to vacate the order of confirmation and quash all the proceedings. This line of attack upon the proceeding is founded upon and must be determined by the condition of the record proper. It is a direct challenge of the authority of the court to make the decree, in the form in which it is sought to be enforced by the order to open the road. This is in the nature of a proceeding to strike off a judgment which is void upon its face; it is an assertion that the judgment does not legally exist. When upon the undisputed facts a court is without authority to enter a decree, that decree may be directly attacked, by a party in interest, at any time before it has been carried into execution: Stevenson v. Virtue, 13 Pa. Superior Ct. 103 and cases there cited. Had this appellant stood by and permitted the public moneys to be expended and the parties, over whose land the road ran, to be prejudiced by an actual opening of the road, it would have been by this course of action estopped. The fact that the appellant never had notice or knowledge of the proceeding, until the recent resurrection of the order from the files of the court, saves him from any suggestion of failure to assert his rights with promptness. He made his attack directly upon the record, and if that record shows upon its face that no order founded upon it can be enforced without violation of law, then he was entitled to have his lands protected against

that illegal order. The form of his motion was not material, it included a motion to quash the order to open the road, and if the order is to fall because of invalidity of the decree, the effect is to strike down the whole proceeding. The time within which a party may appeal from the refusal to strike off or quash a decree or order, void upon its face, begins to run from the date of such refusal and not from that of the decree.

The alleged vice of this record is that it does not definitely locate the road which it is now sought to force the supervisors of Moon township to open through this appellant's farm. The primary cause of this uncertainty is alleged to lie in the failure of the report of the reviewers, which is the foundation of the decree, to define with sufficient precision the termini of the proposed road. " The termini of a projected road are its designated and only means of identification. It is by these points it is docketed and indexed. . . . And if the viewers fail to describe the termini of the road as viewed and located it is fatal. They are the initials which describe the proceeding, and limit the authority delegated by the court in its orders to the viewers. To go beyond them is to exceed the authority. When once the viewers cut loose from the order and go outside of it, the whole identity of the proceeding is lost:" Road in Lower Merion, 58 Pa. 66. The record in this case gives the courses and distances of the proposed road between the terminal points, and if either terminus is fixed with sufficient precision the whole road may be located with reasonable accuracy. In a road proceeding the petition for viewers lies at the foundation of the record and it must state the beginning and ending of the proposed road. The termini of the road as located by the viewers must be in substantial compliance with the petition, and the order to open the road must be in strict accordance with the report of the viewers. No duty devolves on the supervisors until the order to open the road issues, their functions are purely ministerial, not discretionary; they must open the road where the court has located it. The means of identifying the road must be found in the report. There must, therefore, be certainty in the description, at least so much certainty that the description will not answer equally well for two distinct roads. The court has no authority to confirm a report, and order a road to be opened where there is nothing upon the record to fix its location:

Bean's Road, 35 Pa. 280 ; O'Hara Township Road, 152 Pa. 319. Does the record which we are now considering fix with sufficient precision either terminus of the road in question ? The petition described the proposed road as follows, to wit: " To begin in the public road leading from the village of Shousetown up Flaugherty's Run at a point near the residence of J. Bonner, on said road, and to end in a public road leading from Stoup's Ferry up a run that is near to the late residence of R. Campbell on said road." Any point "in a public road leading from Stoup's Ferry up a run that is near to the late residence of R. Campbell " would answer this description of one terminus of the proposed road. No point at which the new road is to enter the then existing public road is in any way indicated. This was manifestly bad and is no doubt responsible for the fact that the terminus involved in this uncertainty, as located by the reviewers is over a quarter of a mile distant from that selected by the viewers. The report of reviewers, which was confirmed by the court and which the order to open the road must follow described the road as follows : " Beginning at a point in the public road leading from the village of Shousetown up Flaugherty's Run, at a point near the residence of J. Bonner, (thence by courses and distances) to a point in the public road leading to Stoup's Ferry, at a point near the residence of the late R. Campbell." In the draft annexed to the report the courses and distances of the proposed road are given as in the report, beginning at the Flaugherty's Run road and ending in another public road some distance beyond the Campbell farm. But there is no indication on the draft of anything by which the particular point of intersection with either of the other public roads can be fixed with reasonable accuracy. At the intersection with the Flaugherty's Run road the draft seems to indicate the existence of a private road, but there is nothing to offer any information whether this is a private road laid out by a legal proceeding, or to what land it is appurtenant, or whether it is a mere temporary means of access through the woodland or field of some farm of which it is a part. How " near the residence of J. Bonner " does this road begin ? The draft seems to show the Flaugherty's Run road for a distance of perhaps one hundred feet on each side of the intersection, but there is nothing to show that J. Bonner ever lived in that vicinity.

To ascertain the distance and direction of the residence of J. Bonner from the terminus of this road we would have to travel outside of this record. The indication on the draught of the existence of a private road does not help the case, for we cannot assume that there is but one farmer in that vicinity who drives out over his own land to the Flaugherty Run road. The report of reviewers makes no mention of any private road. It is not possible to ascertain from the draft whether the proposed road has been laid out in accordance with the beginning and ending as described in the petition or report, or in entire disregard of them : O'Hara Township Road, supra. Neither the report nor the draft offers any means of ascertaining how far distant or in what direction is the residence of J. Bonner from the point where this road is asserted to begin, although if the draft is correct the distance must be considerable. The designation of the other terminus is equally unsatisfactory. The draft does not indicate the distance or direction of that point from the late residence of R. Campbell or any other object. It does show that the road passes entirely over the Campbell farm and terminates a considerable distance therefrom on other lands, but although the land is marked " cleared " the name of the owner is not given. The report describes this point " as near the residence of the late R. Campbell." It is impossible to discover what meaning this board of reviewers intended to convey when they used the word " near." The appellees contend that this terminus is in the Stoup's Ferry road, at a point which is conceded to be at least one thousand feet from the residence of Robert Campbell. The report says that it is near the residence of Robert Campbell. The draft does not show the location of the residence of Robert Campbell, but it does show that the terminus of the road must be a long distance from the Campbell residence, if the road is to be located in accordance with the draft. The suggestion in the brief of appellees, that " A maple tree on the Campbell place is designated as the terminus on the public road," finds no warrant in the record. The report makes no mention of a tree, and while the draft indicates that there was a tree a short distance from the supposed terminus of the road, there is nothing to indicate the variety or identity of the tree, or show its distance from the road. We cannot

assume that there was but one tree standing beside the Stoup's Ferry Run road through Moon township.

The certainty required in proceedings of this nature is wanting in this record, and is apparent upon the face of the decree. The defects of the decree necessarily appeared in the order issued thereupon, requiring the supervisors to open the road. The owners of land over which supervisors attempt to open a road have a right to demand that the writ under which the officer acts shall designate the land upon which he shall enter, and not vest him with a discretion to determine the land to be appropriated. They are entitled to the judgment of the court, for which that of the supervisors is not to be substituted. The order to open this road, now in the hands of the supervisors of Moon township, cannot be carried into effect without the exercise of a discretion by those officers with which they are not by law invested. The appellees seek by attachment to compel the officers to exercise that discretion which the law denies them. Of such a record it was said, in Bean's Road, supra, " the court has made a final order that cannot be executed, an order which in itself is erroneous." We have held that such an order should be quashed : Road in Dunbar Township, 12 Pa. Superior Ct. 491.

The order of the court of quarter sessions dismissing the petition of appellant is reversed, and the proceedings are quashed.